UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

STANLEY CAVIENSS,

 *Plaintiff*,

 v.

NORWALK TRANSIT, AFSCME

 *Defendant*s.

No. 3:21-cv-01694 (MPS)

## RULING ON MOTIONS TO DISMISS

Stanley Cavienss alleges that he suffers from Tourette syndrome, a disorder that causes uncontrollable repetitive motions and unwanted sounds, including inadvertent use of obscene words.  According to Cavienss, while he was employed as a bus driver for Norwalk Transit District, an altercation with a bicyclist triggered his Tourette syndrome, leading to an "outburst" where he used obscenities.  The bicyclist complained to Norwalk Transit District, and Cavienss' supervisors discharged Cavienss for the incident.  Cavienss' union, AFSCME, represented him during the discharge process and helped him submit a grievance, but Cavienss claims that AFSCME failed to assign him an unbiased representative.  Cavienss, proceeding *pro se*, filed suit against Norwalk Transit District, alleging that Norwalk Transit District violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60a et *seq.*, and the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment. Cavienss also alleges that AFSCME violated Cavienss' rights under the National Labor Relations Act ("NLRA") and the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment. *Id.*  The Defendants have filed motions to dismiss. I have carefully considered the Fifth Amended

Complaint, its attachments, and the parties' briefs, and I find that oral argument will not aid the decisional process. For the reasons that follow, I dismiss the complaint.

I.     BACKGROUND

The following facts, drawn from Cavienss' Fifth Amended Complaint and exhibits, are accepted as true for the purpose of this motion.[1]

A.  Cavienss' Employment with Norwalk Transit District

In 2021, Stanley Canvienss was employed as a bus driver for Norwalk Transit District.[2] When he applied for the position, Cavienss submitted documentation informing Norwalk Transit District that he has "Nervous Tourette Syndrome," including a memorandum from a doctor "that explains [his] mental impairment." ECF No. 40 ¶¶ 17, 35, 46-47.  "Tourette syndrome … involves repetitive movements or unwanted sounds (tics) that can't be easily controlled." *Id.* at 20.  In some cases, these tics include "using vulgar, obscene, or swear words." *Id.* at 22.  As Cavienss' psychologist attests in a letter attached to the Fifth Amended Complaint, Cavienss' "Tourette syndrome impediments … have been part of his childhood history dating back to elementary school." *Id.* at 18.

Cavienss performed his job responsibilities without any driving incidents until November 15, 2021, when he had an altercation with a bicyclist while he was working. *Id.* ¶ 35.  Cavienss

---

[1] In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), I consider not only "facts alleged in the complaint" but also "documents attached to the complaint as exhibits." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  I also consider documents "incorporated by reference in the complaint," and documents not incorporated by reference "where the complaint relies heavily upon [their] terms and effect, thereby rendering the document[s] integral to the complaint." *DiFolco*, 622 F.3d at 111 (citations and internal quotation marks omitted).

[2] In some paragraphs of the Fifth Amended Complaint, Cavienss states that his employment with Norwalk Transit District and discharge happened in November of 2022. ECF No. 40 ¶¶ 18-20.  The documents Cavienss attaches to his complaint, however, make it clear that the events occurred in November of 2021. *Id.* at 18-41; *see Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 607 F. Supp. 2d 500, 502 (S.D.N.Y. 2009) ("Where a conclusory allegation in the complaint conflicts with a statement made in a document attached to the complaint, the document controls and the allegation is not accepted as true.").

claims the bicyclist cut in front of his bus. *Id.* ¶ 35.  When Cavienss attempted to tell the bicyclist

that his maneuver was dangerous, the bicyclist "us[ed] vulgar language" and "display[ed] obscene

gestures." *Id.*  This altercation triggered Cavienss' Tourette syndrome, leading to an "outburst."

*Id.* ¶ 28.  Cavienss does not describe the outburst in detail, but a contemporaneous letter from his

psychologist indicates that he used obscenities. *Id.* at 19.

The bicyclist complained about Cavienss, leading Cavienss' supervisor to review the bus's

camera footage of the incident. *Id.* at 41. Cavienss' supervisor wrote a letter accusing Cavienss of

three violations of Norwalk Transit District's disciplinary codes: "careless or reckless operation,"

"disobeying traffic regulations," and "discourteous[ness] or rudeness." *Id.* Norwalk Transit

District suspended Cavienss and directed him to appear at an investigatory meeting to discuss the

incident. *Id.* ¶ 19.

On November 17, 2021, Norwalk Transit District held a status of employment meeting,

where three employees informed Cavienss that his employment had been terminated. *Id.* ¶¶ 20-21;

*id.* at 41.  The employees told Cavienss that his "outburst" reflected poorly on the company. *Id.*

¶ 35.   Norwalk Transit District did not consider or address Cavienss' Tourette syndrome during

the status of employment meeting, nor did they propose a plan to restructure Cavienss' work

responsibilities. *Id.* ¶¶ 35, 48.  Cavienss does not claim that he mentioned his Tourette syndrome

or requested a reasonable accommodation during the meeting. *Id.* ¶ 35.

Norwalk Transit District employees are represented by AFSCME Local 1303-186. *Id.* ¶ 12.

Cavienss asked AFSCME to appoint someone to represent him regarding his discharge by Norwalk

Transit District. *Id.* ¶ 14.  An AFSCME representative, who was also an employee in Cavienss'

department, was present at the status of employment meeting. *Id.* ¶ 41.  Cavienss asked for a

representative outside his department, however, since supervisors in his department had been

circulating a video of Cavienss' interaction with the bicyclist. *Id.*  In an email dated November 26, 2021, Cavienss expressed concern that the tape was "shown to non [HR personnel]" who might "[j]udge [him] … unfairly." *Id.* at 25.  "The Norwalk Officials[] presiding over the status of employment meeting[] told [him] he had to be represented by a union representative from the same department" in which he worked. *Id.* ¶ 52.

In the days after his discharge, Cavienss worked with his union representative to file a grievance and request reinstatement. *Id.* at 25.  To support Cavienss' grievance, Cavienss' psychologist emailed several Norwalk Transit District employees to attest to his "long-standing history of Tourette Syndrome impediments." *Id.* at 23.  The psychologist also submitted a letter noting that "the use of vulgar, obscene or swear words" is a "common vocal [tic] seen in the Tourette syndrome," and stating that he "suspect[ed] that" Cavienss' outburst "was a rather involuntary response to an escalating anger-inducing incident with the bicyclist." *Id.* at 19.  He added that he had "never witnessed [Cavienss'] loss of control nor his blatant disregard for rules." *Id.*  Cavienss' Fifth Amended Complaint does not provide details on what Norwalk Transit District said at the grievance hearing, although it is clear Cavienss was not reinstated afterwards.

Cavienss also claims he went to an "arbitration meeting" where an Equal Employment Opportunity Commission ("EEOC") Investigator was present.[3] *Id.* ¶¶ 22-24, 41.  The EEOC Investigator told him he had a right to bring a representative to the meeting. *Id.* ¶ 24.  Cavienss alleges that ASCME Local 1303-186 did not provide him with representation during the EEOC investigation. *Id.* ¶ 14.

---

[3] Cavienss claims that this meeting happened in November of 2022. ECF No. 40 ¶ 23.  In the paragraphs preceding his description of the arbitration hearing, however, Cavienss repeatedly lists events that happened in 2021 and claims they happened in 2022.  Since there is no record of the arbitration hearing in the exhibits Cavienss submits, I cannot determine the exact timing of the hearing.

**B. Procedural History**

On December 20, 2021, Cavienss filed a Complaint alleging that Norwalk Transit District violated his rights under the ADA. ECF No. 1.  Cavienss' first complaint, and a second amended complaint against Norwalk Transit District and AFSCME, were each dismissed because Cavienss had not provided a "right to sue" letter from the EEOC. ECF Nos. 19, 23.

The EEOC issued a right to sue letter on December 9, 2022. ECF No. 40 at 14.  Cavienss then filed two additional amended complaints, ECF Nos. 29, 34, both of which Magistrate Judge Spector recommended that the Court dismiss without prejudice, ECF Nos. 33, 39.  Judge Spector's final recommended ruling concluded that Cavienss had not adequately established a prima facie case of disability discrimination because Cavienss failed to allege that (1) the defendants are subject to the ADA, (2) he is disabled under the ADA, (3) he was otherwise qualified to perform the essential functions of his job, (4) the defendants discriminated against him, and (5) he was denied a reasonable accommodation. ECF No. 39 at 16-23.  On March 6, 2023, Cavienss filed his Fifth Amended Complaint against Norwalk Transit District and AFSCME. ECF No. 40.

Norwalk Transit District now moves to dismiss the Fifth Amended Complaint for "failing to comply with fundamental rules of pleadings." ECF No. 51 at 1.  In the alternative, Norwalk Transit District moves for a more definitive statement of Cavienss' claims, Fed. R. Civ. P. 12(e), and moves to strike portions of the complaint that are "redundant, immaterial, impertinent, or scandalous," Fed. R. Civ. P. 12(f). *Id*.  AFSCME also moves to dismiss the Fifth Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). ECF No. 55.

## II.    LEGAL STANDARD

To avoid dismissal under Fed. R. Civ. P. 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  I accept as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id*., and must "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co*., 517 F.3d 104, 115 (2d Cir. 2008).  However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp*., 770 F.3d 170, 177 (2d Cir. 2014) (citation omitted).  I may also dismiss a complaint if it fails to comply with Fed. R. Civ. P. 8 because it is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) (citation and internal quotation marks omitted).

Although a *pro se* complaint must be liberally construed "to raise the strongest arguments it suggests," *pro se* litigants are nonetheless required to "state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (brackets, internal quotation marks, and citations omitted).  "[A] liberal interpretation of a *pro se* civil rights complaint may not supply essential elements of the claim that were not initially pled." *Darby v. Greenman*, 14 F.4th 124, 130 (2d Cir. 2021) (internal quotation marks omitted).

III.   **DISCUSSION**

  A. **Norwalk Transit District's Motion to Dismiss**

Norwalk Transit District's sole argument in favor of dismissal is that the Fifth Amended Complaint does not comply with Fed. R. Civ P. 8(a)'s requirement that a complaint contain a

"short and plain statement" of the plaintiff's claim for relief. ECF No. 52 at 4-5. In particular, Norwalk Transit District argues that several paragraphs mix factual allegations with "recitations of the plaintiff's understanding of statutes and regulations," "[the plaintiff's] analysis," and "attempt[s] to argue his case." *Id.* at 5.

I disagree. The standard that Rule 8 sets is "lenient," and "dismissal pursuant to the rule is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Wynder*, 360 F.3d at 80 (internal quotation marks omitted); *see also Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001) (holding that a district court is not "authorized to dismiss a complaint merely because it contains repetitious and irrelevant matter, a disposable husk around a core of proper pleading"). Moreover, a "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted). While the Amended Complaint includes some extraneous or irrelevant information, it is not so lengthy or confusing that the defendants "cannot fairly be expected to respond to this complaint in a meaningful way." ECF No. 52 at 5. Therefore, I deny Norwalk Transit District's motion to dismiss the complaint for failure to comply with Rule 8.

### B.  Cavienss' Disability Discrimination Claim

Though Norwalk Transit District does not specifically address Cavienss' ADA claims in its Motion to Dismiss, I still examine whether the allegations in Cavienss' Fifth Amended Complaint are sufficient to support a disability discrimination claim against Norwalk Transit District.[4] This is Cavienss' Fifth Amended Complaint, and Magistrate Judge Spector has already issued two recommended rulings concluding that Cavienss' previous amended complaints did not

---

[4] Although Cavienss has paid the filing fee, this Court still has the authority to dismiss frivolous complaints *sua sponte*. *Fitzgerald v. First E. Seventh Street Tenants Corp.*, 221 F.3d 362, 363-64 (2d. Cir. 2000).

state a claim under the ADA. ECF Nos. 33, 39. Cavienss' Fifth Amended Complaint does not address many of the shortcomings in the recommended rulings.

The ADA prohibits an employer from discriminating against a qualified employee on the basis of disability. 42 U.S.C. § 12112(a).  A plaintiff claiming disability discrimination under the ADA must plausibly allege that: "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by [his] employer; (3) [he] was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) [he] suffered an adverse employment action; and (5) the adverse action was imposed because of [his] disability." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015).

### *Employer Subject to the ADA*

Cavienss does not adequately allege that Norwalk Transit District is covered by the ADA. Employers are covered by the ADA if they are "engaged in an industry affecting commerce" and have "15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 12111(5)(A).  Cavienss does not allege that Norwalk Transit District has at least 15 employees or that those employees meet the minimum statutory working requirements. *See, e.g.*, *Geebro v. BPR 4000 LLC*, No. 17-CV-08287, 2019 WL 652595, at *3 (S.D.N.Y. Feb. 15, 2019) (dismissing state civil rights claim where complaint failed to allege that defendants had the required number of employees).

### *Disability Under the ADA*

On the other hand, Cavienss does adequately allege that he is disabled under the ADA. The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being

regarded as having such an impairment." 42 U.S.C. § 12102(1).  Cavienss allegations do not

support an inference that he is substantially limited in a major life activity, or that he has a record

of being substantially limited in a major life activity, but they do support an inference that Norwalk

Transit District perceived him as disabled.

### Substantially Limits a Major Life Activity

At the motion to dismiss stage, the plaintiff must allege that he has "a physical or mental

impairment, which 'substantially limit[s]' an activity that 'constitutes a major life activity under

the ADA.'" *Telemaque v. Marriott Int'l, Inc.*, No. 14-cv-6336, 2016 WL 406384, at *6 (S.D.N.Y.

Feb. 2, 2016) (citations omitted).  Alternately, the plaintiff can allege that he has a "record" of an

impairment that substantially limits a major life activity. 42 U.S.C. § 12102(1)(B).  The ADA

provides that "major life activities include, but are not limited to … communicating … and

working." 42 U.S.C. § 12102(2)(A).

Cavienss' alleges that he has a long history of Tourette syndrome, which caused him to

inadvertently use obscenities on November 15, 2021. *See* ECF No. 40 at 18-22 (detailing Cavienss'

history of Tourettte syndrome "impediments").  But Cavienss never describes the frequency or

severity of his symptoms.  A report from the Mayo Clinic, attached to the complaint, observes that

Tourette syndrome symptoms are "diverse" and vary in severity. *Id.* at 21. *Compare McBride v.*

*Amer Tech., Inc.*, No. 12-CV-00489, 2013 WL 2541595, at *1, *5 (W.D. Tex. June 10, 2013)

(holding that "minor" Tourette syndrome tics did not substantially limit major life activities) *with*

*Ray v. Kroger Co.*, 264 F. Supp. 2d 1221, 1226 (S.D. Ga. 2003) (holding that Tourette syndrome

substantially limited communication where plaintiff had "uncontrollable daily outbursts of vocal

tics, including profanity, vulgar words and racial slurs").  While "[s]evere symptoms might

significantly interfere with communication, daily functioning and quality of life," ECF No. 40 at 21, Cavienss never alleges that his symptoms are severe.

The fact that Cavienss' Tourette syndrome caused him to inadvertently use profanity in response to a rude bicyclist does not support an inference that his disorder significantly interferes with a major life activity. *See Pineda v. ESPN, Inc.*, No. 3:18-CV-00325 (MPS), 2018 WL 5268123, at *3 (D. Conn. Oct. 23, 2018) (holding that plaintiff had not alleged a qualifying disability where plaintiff "[did] not provide any factual support detailing the frequency, duration, or severity of any limitations on a life activity caused by her PTSD" (internal quotation marks omitted)). Therefore, Cavienss has not alleged that his Tourette syndrome substantially limits a major life activity. Nor has Cavienss alleged that he has "a record of" a physical or mental impairment that substantially limited a major life activity, since Cavienss never describes the Tourette syndrome symptoms he experienced in the past.

### Regarded as Disabled

Cavienss does sufficiently allege that Norwalk Transit District regarded him as disabled. A person is "regarded as" disabled if he has "an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). "[A]n individual does *not* satisfy the requirement of 'being regarded as having such an impairment' if the impairment is 'transitory and minor.'" *Singleton v. United Parcel Serv., Inc.*, No. 3:13-CV-00409 VLB, 2014 WL 943129, at *2 (D. Conn. Mar. 11, 2014) (quoting 42 U.S.C. § 12102(3)(B)).

Cavienss alleges that when he applied, he told Norwalk Transit District about his Tourette syndrome and included a "doctor's memorandum … that explains [his] mental impairment," ECF No. 40 ¶¶ 46-47. Under the "less stringent standards" the Court must apply to a *pro se* complaint,

*Erickson*, 551 U.S. at 94, these allegations are sufficient to support an inference that Norwalk

Transit District perceived Cavienss as having a "physical or mental impairment" when it employed

him.[5]  Tourette syndrome is, at minimum, not "transitory." *See Singleton*, 2014 WL 943129, at \*2

(noting that under the ADA's implementing regulations, a person is perceived as disabled unless

the employer shows the perceived impairment "is both 'transitory' and 'minor'") (quoting 29

C.F.R. 1630.15(f)).

### *Otherwise Qualified for his Position*

Cavienss has not sufficiently alleged that he was otherwise qualified for his position as a

bus driver.  An employee is "otherwise qualified" for a position when he "is able to perform the

essential functions of that job, either with or without a reasonable accommodation." *Shannon v.*

*N.Y.C. Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003).  This burden is "not a heavy one," and

requires only that the plaintiff "demonstrate that he possesses the basic skills necessary for

performance of the job." *DeAngelo v. Yellowbook Inc.*, 105 F. Supp. 3d 166, 175 (D. Conn. 2015)

(citations and internal quotation marks omitted).

Cavienss alleges that he "was qualified to operate buses provided by Norwalk Transit

District." ECF No. 40 ¶ 15. He also claims that he was qualified because he was "hired by Norwalk

Transit [District]," and he "met [Norwalk Transit District's] legitimate expectations" by

performing his job with "no driving incidents up until [the] onsite altercation with the bicyclist."

ECF No. 40 ¶¶ 32, 35.

---

[5]After Cavienss was discharged, Cavienss' psychologist also sent a letter to Norwalk Transit District employees explaining that his "Tourette syndrome impediments … have been part of his childhood history dating back to elementary school." *Id.* at 19. This letter is clearly sufficient to support an allegation that Norwalk Transit District perceived Cavienss as having a physical or mental impairment when it decided not to reinstate him. *See Baker v. Connecticut*, No. 3:03-CV-01894 (JCH), 2006 WL 581205, at \*9 (D. Conn. Mar. 8, 2006) ("Denial of reinstatement is also an adverse employment action.").

These allegations are insufficient to support an inference that Cavienss was qualified for his position. Cavienss "does not allege the 'essential functions' or 'fundamental job duties' of the [bus driver] position or that he was able to perform those functions." *Brown v. United Parcel Serv. Inc.*, No. 5:22-CV-00762, 2022 WL 4077775, at *3 (N.D.N.Y. Sept. 6, 2022) (holding that allegations plaintiff "passed a road test" and "submitted a certification of completion for an online accident prevention course" were insufficient to allege he was otherwise qualified); *see also Moran v. Wegmans Food Markets, Inc.*, 65 F. Supp. 3d 327, 330 (W.D.N.Y. 2014) (holding that allegation plaintiff "maintained an above average work record" was insufficient to allege he was otherwise qualified). Nor does Cavienss allege for how long he performed the job without incident. While the fact that Cavienss was hired makes the "inference of minimal qualification … easier to draw," Cavienss provides little else to support that inference. *Gregory v. Daly*, 243 F.3d 687, 696-97 (2d Cir. 2001) (holding that plaintiff had adequately alleged qualifications where, beyond hiring her, employer "retained her services for ten years and promoted her into successively higher positions").

Indeed, Cavienss' "own allegations raise questions as to [his] ability to perform essential functions of [his] job." *Gaube v. Day Kimball Hosp.*, No. 3:13-CV-01845 (VAB), 2015 WL 1347000, at *10 (D. Conn. Mar. 24, 2015). Cavienss' incident with the bicyclist constitutes significant misconduct. Cavienss admits that the bicyclist's behavior "triggered an 'outburst," ECF No. 40 ¶ 28, where he inadvertently used "vulgar, obscene, or swear words," *id.* at 19. And, though he contests allegations that he violated traffic rules or endangered his passengers, *id.* at 29, he does not deny that his actions violated Norwalk Transit District's policy against "discourteous[ness] or rudeness," *id.* at 41.

"[A] disabled plaintiff ceases to be otherwise qualified for a position when … he engages in misconduct in violation of a workplace policy of the employer," even when the misconduct was "a manifestation of his disability." *Valentine v. Standard & Poor's*, 50 F. Supp. 2d 262, 287, 289 (S.D.N.Y. 1999), *aff'd*, 205 F.3d 1327 (2d Cir. 2000); *see also McElwee v. Cty. of Orange*, 700 F.3d 635, 641 (2d Cir. 2012) ("[U]nder the ADA, workplace misconduct is a legitimate and nondiscriminatory reason for terminating employment, even when such misconduct is related to a disability."); *Krasner v. City of New York*, No. 11-CV-02048, 2013 WL 5338558, at *12 (S.D.N.Y. Sept. 23, 2013), *aff'd*, 580 F. App'x 1 (2d Cir. 2014) (compiling cases). Further, where a job requires "regular interaction with customers," the ability to refrain from rudeness or discourteousness is an essential function of the job. *Ray*, 264 F. Supp. 2d at 1228 (holding that a grocery store clerk was not qualified for his job where his Tourette syndrome "caused him to blurt out curse words and racial slurs"). Since Cavienss does not allege facts showing that he could have performed this function, with or without a reasonable accommodation, he has not sufficiently alleged that he was otherwise qualified for his job.

## C. Cavienss' Reasonable Accommodation Claim

Cavienss next alleges that Norwalk Transit District violated the ADA by failing to accommodate his Tourette syndrome.

"A plaintiff states a prima facie failure to accommodate claim by demonstrating that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McMillan v. City of New York*, 711 F.3d 120, 125-26 (2d Cir. 2013) (internal quotation marks omitted).

Cavienss Fifth Amended Complaint does not meet these requirements. As I discuss above, Cavienss has not sufficiently alleged that Norwalk Transit District is covered by the ADA. And, he never identifies a reasonable accommodation Norwalk Transit District should have provided or alleges that Norwalk Transit District failed to provide that accommodation to him. *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 139 (2d Cir. 1995) (observing that the plaintiff has "the burden of identifying an accommodation, the costs of which, facially, do not clearly exceed its benefits"). As such, his allegations are insufficient to raise a failure to accommodate claim under the ADA.

### D. Constitutional Claims

In addition to his ADA claims, Cavienss alleges that both Norwalk Transit District and AFSCME violated his rights under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment.  Cavienss does not allege specific facts suggesting that AFSCME, rather than Norwalk Transit District, prevented him from being represented by a union representative who worked outside his department. *See* ECF No. 40 ¶ 52.  However, I construe his claims liberally to assert that AFSCME violated his rights to due process and equal protection by "denying [him] the privilege of having an unbiased union representative" from outside his department "represent him" ECF No. 40 ¶¶ 41, 53.  He also seems to allege that Norwalk Transit District violated his right to due process by failing to keep a "record of the circumstances that gave rise to an arbitration meeting involving the EEOC" and by terminating his employment. ECF No. 40 ¶¶ 41, 49.

These allegations are also insufficient to raise a constitutional claim.

### Due Process Clause

"[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).  Procedural due process analysis "proceeds

14

in two steps: [1] [a court] first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and [2] if so ... whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam).

Cavienss' allegations do not support an inference that he had a property interest in continued employment with Norwalk Transit District. "A public employee has a property interest in continued employment if the employee is guaranteed continued employment absent 'just cause' for discharge." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). Cavienss does not state whether he could be fired only for cause. I need not consider whether the procedures Norwalk Transit District and AFSCME followed were constitutionally sufficient, since Cavienss' due process claim fails at the first step.

### *Equal Protection Clause*

To state a claim under the Equal Protection Clause, a plaintiff must "plausibly assert that (1) they were treated differently from other similarly-situated individuals and (2) such selective treatment was based on impermissible considerations ...." *Kajoshaj v. New York City Dep't of Educ.*, 543 F. App'x 11, 15 (2d Cir. 2013). Because "disability is not a protected class under the Equal Protection Clause of the Fourteenth Amendment," *Gallagher v. Town of Fairfield*, No. 3:10-CV-01270, 2011 WL 3563160, *4 (D. Conn. Aug. 15, 2011) (internal quotation marks omitted), and because there is no "fundamental right to continued public employment," *Guettlein v. U.S. Merch. Marine Acad.*, 577 F. Supp. 3d 96, 104 (E.D.N.Y. 2021), Cavienss must allege facts showing that there was no rational basis for any differential treatment he received. Under rational basis review, a court must uphold the challenged decision if "there is *any* reasonably conceivable state of facts that could provide a rational basis for the decision." *Pappas v. Town of Enfield*, 18 F. Supp. 3d 164, 185 (D. Conn. 2014) (internal quotation marks and alterations omitted).

15

Cavienss claims that AFSCME violated the Equal Protection Clause by declining to assign him a union representative from another department, and Norwalk Transit District violated the Equal Protection Clause by failing to keep a record of the circumstances that precipitated his EEOC arbitration hearing.  But Cavienss has not alleged that he was treated differently than similarly situated individuals when AFSCME and Norwalk Transit District made these decisions.  While he states generally that "employees not in [his] protected class were treated more favorably" in one paragraph of his ADA claim, EFC No. 40 ¶ 7, 35, he does not provide any factual allegations to support that assertion or otherwise elaborate on it.  These allegations are not sufficient to raise an Equal Protection Clause claim.[6]

### E.  Cavienss' National Labor Relation Act Claim

Finally, Cavienss alleges that AFSCME violated his rights under the National Labor Relations Act when AFSCME Local 1303-186 declined to provide Cavienss with a representative from outside his department.  ECF No. 40 ¶¶ 52-53.  I construe Cavienss' allegation that AFSCME violated the National Labor Relations Act (NLRA) as a claim that AFSCME breached the NLRA's duty of fair representation.   For the reasons I outline below, I dismiss Cavienss' NLRA claim.

"To prove that a union has breached its duty of fair representation, the challenging members must establish two elements.  First, they must prove that the union's actions or inactions are either arbitrary, discriminatory, or in bad faith.  Second, [they] must demonstrate a causal connection between the union's wrongful conduct and their injuries." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citations and internal quotation marks omitted).

---

[6] Cavienss also does not plead any facts suggesting that AFSCME is a state actor or that AFSCME was acting under color of state law, a necessary element of any Section 1983 claim alleging a violation of the Fourteenth Amendment. *See Eaddy v. Jemiola*, No. 3:11-CV-1081 (MPS), 2013 WL 441077, at *3 (D. Conn. Feb. 5, 2013) ("To state a claim under Section 1983 … a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law ....  In general, a labor union is not a state actor ....").

Further, a plaintiff's claim for breach of the duty of fair representation is "subject to a six-month statute of limitations," which "accrues no later than the time when [the plaintiff] knew or reasonably should have known that such a breach of the duty ... had occurred …." *Coureau v. Granfield*, 942 F. Supp. 2d 315, 319 (E.D.N.Y. 2013) (quoting *Cohen v. Flushing Hosp. & Med. Ctr.*, 68 F.3d 64, 67 (2d Cir.1995)).

Cavienss' allegations do not support an inference that AFSCME's decision to assign him a representative from his department was "arbitrary, discriminatory, or in bad faith," or that it led to Cavienss' discharge or the denial of Cavienss' grievance. *Vaughn*, 604 F.3d at 709.  Moreover, Cavienss only added AFSCME to this lawsuit as a party in February of 2023, more than a year after AFSCME allegedly failed to provide Cavienss with an unbiased representative. ECF No. 34. The statute of limitations governing Cavienss' NLRA claim expired long ago.  Therefore, I dismiss Cavienss' claim against ASFCME for breach of the duty of fair representation.

IV.     **CONCLUSION**

For the foregoing reasons, Cavienss' ADA, Fourteenth Amendment, and NLRA claims are dismissed without prejudice.  Although Cavienss has already received multiple opportunities to plead an adequate complaint, because some of the defects identified in this ruling may well be reparable with greater factual detail about Cavienss' employment, his disability, and the circumstances of his termination, the Court will allow him a final opportunity to replead the claims. Since I have dismissed all of Cavienss' federal claims at an early stage of this litigation, I decline to exercise supplemental jurisdiction over his claims under the Connecticut Fair Employment Practices Act, and so those claims are also dismissed without prejudice.

The Court also notes Cavienss has filed a motion to appoint counsel (ECF No. 85). The Second Circuit repeatedly has cautioned district courts against the routine appointment of counsel.

17

*See, e.g.*, *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 204 (2d Cir. 2003); *Hendricks v. Coughlin*, 114 F.3d 390, 393 (2d Cir. 1997). The Second Circuit requires the movant to satisfy "the threshold requirement that the [case] have 'some likelihood of merit.'" *Smith v. Fischer*, 803 F.3d 124, 127 (2d Cir. 2015) (citing *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172-74 (2d Cir. 1989)). Based on the current record, the Court cannot determine the likely merit of Cavienss' claims. Therefore, Cavienss' motion to appoint counsel is DENIED as premature, without prejudice to refiling. Nonetheless, the Court recommends that Cavienss confer with Attorney Cat Itaya with the Federal *Pro Se* Legal Assistance Program, who can help him draft his complaint. Contact information can be found at https://nhlegal.org/federalprose or by telephone (203) 850-7720.

Any amended complaint shall be filed on or before November 30, 2023.  Due to the number of pleading opportunities already provided, the Court will not extend this deadline. The motions to dismiss (ECF Nos. 51, 55) are DENIED as moot.

IT IS SO ORDERED.

_____/s/_____

Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut

November 1, 2023